IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


**JOHN J. BOWMAN, JR.,**

    **Plaintiff,**

v.                                                   Civil Action No. 1:10cv106
                                                          (Judge Keeley)

**ANYA KOVSLEK, JOEL ZIEGLER,
G. ESPARZA, ROBERT TRYBUS, JEFFREY
DURANKO, ROBERT ROFF, MATTHEW
GEYER, ERIC ELZA, DANE ZIMMERMAN,
BRIAN CALLIHAN, VERONICA FERNANDEZ,
KENNY ADAMS AND D. SHAW,**

    **Defendants.**

## OPINION/REPORT AND RECOMMENDATION

### I. Procedural History

The *pro se* plaintiff initiated this Bivens[1] action on July 12, 2010. [Dckt. 1] After completing a preliminary review, the undersigned issued an Order to Answer. [Dckt. 7] On November 24, 2010, the defendants filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. [Dckt. 48] Because the plaintiff is proceeding without counsel, on December 2, 2010, the Court issued a Roseboro Notice advising the plaintiff of his right to file a response to the defendants' motion. [Dckt. 59] The plaintiff filed his response on February 24, 2011. [Dckt. 72]

### II. The Contentions of the Parties

**A. The Complaint**

In the complaint, the plaintiff alleges that the defendants violated his rights under the Fifth

---

[1] Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971) (authorizing suits against federal employees in their individual capacities).

and Eighth Amendments to the United States Constitution. As to his Eighth Amendment rights, the plaintiff asserts that his detention in the Special Housing Unit ("SHU") at FCI-Morgantown for 205 days constituted cruel and unusual punishment. As to his Fifth Amendment rights, the plaintiff asserts that his due process rights were violated when he was placed in the SHU without cause, *i.e.*, without any disciplinary charge or incident report. In addition, the petitioner alleges that because the defendants acted in concert to deprive him of his constitutional rights, their actions constitute a conspiracy.

As relief, the plaintiff seeks compensatory and punitive damages, "tax gross-up," costs, and any other relief the Court deems proper.

**B.  The Defendants' Motion**

In their memorandum in support of their motion, the defendants assert the following:

(1) the plaintiff failed to exhaust administrative remedies;

(2) the plaintiff fails to state a claim for which relief may be granted by not establishing causes of action against defendants in their individual capacities for constitutional violations because he

    (a) failed to establish a violation of the Eighth Amendment,
    (b) failed to establish that he had a protected liberty interest with which defendants interfered;

(3) plaintiff fails to state a valid conspiracy claim;

(4) the defendants are entitled to qualified immunity;

(5) any <u>Bivens</u> claim against the defendants in their official capacities is barred by sovereign immunity; and

(6) any defendant who is not alleged to have taken a specific act in violation of a constitutional right must be dismissed.

### C. The Plaintiff's Response

In response to the defendants' motion, the plaintiff asserts that he is not required to exhaust his administrative remedies because he was not "in custody" at the time this case was filed. He next asserts that he has not raised any claims against the defendants in their official capacities and the defendants claims of sovereign immunity are therefore moot. The plaintiff further asserts that the defendants are not entitled to qualified immunity and that the defendants have stated the wrong test on the matter.

Next, the plaintiff raises two new grounds for relief. First he alleges a violation of his Fourth Amendment rights. In support of that claim, the plaintiff asserts that he was "seized" and placed in the SHU without probable cause. Second, he asserts that his right to privacy was violated when defendants Geyer and Roff discussed the plaintiff's possible psychiatric and psychological condition within full hearing of every inmate in the SHU.

The plaintiff then reiterates much of his prior arguments and argues that his claims are valid. He also attempts to show inconsistencies in the defendants affidavits, calls into question the veracity of those documents, and questions why certain defendants did not provide affidavits at all. Thereafter, the plaintiff requests that the defendants' motion be denied and that his case proceed.

### III. Standards of Review

### A. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion

to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must "contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* (citations omitted), to one that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E. I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, adopted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded

complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. *Id.*

**B.  Motion for Summary Judgment**

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).  In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party."  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact.  Celotex at 323.  Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts."  Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The nonmoving party must present specific facts showing the existence of a genuine issue for trial.  *Id.*  This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  Anderson at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment.  *Id.* at 248.  Summary judgment is proper only "[w]here  the record taken as a whole could not lead a rational trier of fact

to find for the nonmoving party." Matsushita, at 587 (citation omitted).

## IV. Analysis

A. **Exhaustion of Administrative Remedies**

The defendants claim that the plaintiff failed to exhaust his administrative remedies as required by the Prisoner Litigation Reform Act ("PLRA"), but failed to support their argument. In response, the plaintiff argues that because he was no longer in custody at the time his case was filed, he was not required to exhaust all administrative remedies.

The Fourth Circuit addressed the issue of former prisoners and administrative remedies in an unpublished opinion, holding that the PLRA exhaustion requirement does not apply to former prisoners. Cofield v. Bowser, 247 Fed.Appx. 413, 414 (4th Cir. 2007). This interpretation follows the holdings of the majority of circuits regarding this issue. For example, the Tenth Circuit held that a former inmate did not have to exhaust administrative remedies. Nortan v. City of Marietta, 432 F.3d 1145, 1150 (10th Cir. 2005). The Ninth Circuit has also interpreted the PLRA in this way, holding that a prisoner released from custody is not required to exhaust all administrative remedies under the PLRA. Talamantes v. Leyva, 575 F.3d 1021, 1023 (9th Cir. 2009).

The defendants allegation that the plaintiff was required to exhaust his administrative remedies is incorrect. According to the Declaration of Marvella Heard, the plaintiff was released from custody on June 18, 2010. [Dckt. 54 at Ex. 1] The plaintiff filed this complaint on July 12, 2010. Because he was not in prison at the time this case was filed, the plaintiff was not required to administratively exhaust his claims and this case should proceed on the merits.

B. **Failure to State a Claim for which Relief may be Granted by Not Establishing Causes of Action Against Defendants in Their Individual Capacities for Constitutional Violations**

    1. **Eighth Amendment Violation**

The plaintiff asserts that spending 205 days in the SHU qualifies as cruel and unusual punishment, a violation of the Eighth Amendment. The defendants allege that the plaintiff did not sufficiently prove that his experience in the SHU qualified as cruel and unusual.

In general, the Eighth Amendment prohibits "cruel and unusual punishment." Farmer v. Brennan, 511 U.S. 825 (1994). In order to comply with the Eighth Amendment, prison punishment must comport with "the evolving standards of decency that mark the progress of a maturing society." Estelle v. Gamble, 429 U.S. 97, 102 (1976). "A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. at 837.

The plaintiff has not provided sufficient evidence to establish a violation of the Eighth Amendment. There was no "excessive risk to inmate health or safety" involved, as the plaintiff has provided no psychological or medical reports that prove that he was negatively affected by the experience. In fact, the psychological reviews that are required to be conducted while in the SHU establish that the plaintiff denied having mental health problems and that the plaintiff did not behave in a manner that would cause the defendants to be concerned about his health. Although the plaintiff claims these reports were falsified, he has provided no evidence other than his own self-serving and conclusory statements to support that contention. Moreover, the plaintiff was given an administrative detention order informing him of the reason for his detention and was provided with all the required procedures typically given to prisoners in the SHU, establishing that the defendants did not disregard his health or safety. Therefore, it is recommended that the plaintiff's Eighth Amendment claim be

dismissed.

## 2. Fifth Amendment Violation

The plaintiff asserts that his placement in the SHU was unjustified and thus was in violation of his due process rights under the Fifth Amendment. The defendants respond by claiming that the plaintiff failed to establish that they interfered with a protected liberty interest, and as such, that no due process violation exists.

In general, the Due Process Clause of the Fifth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. V §1. The defendants are correct that before it can be determined that the Due Process Clause was violated, it must be determined that a liberty interest was at stake. Sandin v. Connor, 515 U.S. 472 (1995). Liberty interests created by regulations are generally limited to "freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Cause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484 (internal citations omitted).

What constitutes an "atypical and significant hardship" under Sandin in the context of administrative segregation was illustrated in the Fourth Circuit decision Beverati v. Smith, 120 F.3d 500 (4th Cir. 1997). In Bevarti, the inmates claimed that:

> when they were initially placed in segregation, their cells were infested with vermin; were smeared with human feces and urine; and were flooded with water from a leak in the toilet on the floor above. And, they assert[ed], they were forced to use their clothing and shampoo to clean their cells. In addition, Inmates maintain[ed] that their cells were unbearably hot and that food they received was cold. Furthermore, [one of the defendants] submitted an affidavit indicating that those assigned to administrative segregation did not receive clean clothing, linen, or bedding as often as required by the regulations governing administrative segregation; that they were

> permitted to leave their cells three to four times per week, rather than seven, and that no outside recreation was permitted; that there were no educational or religious services available; and that food was served in considerably smaller portions.

*Id.* at 504. Nevertheless, the Court held that "although the conditions were more burdensome than those imposed on the general prison population, they were not so atypical that exposure to them for six months imposed a significant hardship in relation to the ordinary incidents of prison life." *Id.*

Under the conditions set forth above, the Fourth Circuit found that the Beverati plaintiffs' liberty interests were not violated, stating that they "do not implicate a liberty interest. And, because *they possessed no liberty interest in avoiding confinement in administrative segregation*, the district court properly granted summary judgment in favor of the prison officials on Inmates' procedural and substantive due process claims." Beverati, 120 F.3d at 504 (emphasis added). Thus, when there is no liberty interest, a denial of due process does not occur.

As segregation in the SHU is an ordinary condition of prison life, the plaintiff must prove that the segregation imposed an "atypical and significant hardship" under Sandin and Beverati to succeed on his due process claim. The plaintiff has failed to bring forward evidence to satisfy this requirement. The only evidence the plaintiff brought forward that could support a hardship claim is that another inmate committed suicide in a nearby cell after one day, but without more evidence that fact alone is insufficient to establish that the plaintiff faced undue hardship in the SHU. Moreover, the defendants have brought forward evidence that the typical review requirements that must be satisfied after placing someone in the SHU were all met. Although the plaintiff claims that these records are falsified, he provides no evidence to support this allegation. By failing to prove an atypical and significant hardship from his placement in the SHU, there is no liberty interest being denied, and it is recommended that the plaintiff's due process claim be dismissed.

## C. Conspiracy Claim

The plaintiff alleges that the defendants were involved in a conspiracy to deprive him of his constitutional rights. The defendants claim that the plaintiff has not satisfied his burden of proving a conspiracy claim.

In order for a private party to be held liable for conspiracy in a §1983 action, the plaintiff must demonstrate that "an otherwise private person acts 'under color of' state law when engaged in a conspiracy with state officials to deprive another of federal rights." Tower v. Glover, 467 U.S. 914, 920 (1984) (citing Dennis v. Sparks, 449 U.S. 24, 27-28 (1980)). Further, the plaintiff must prove that the defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in the deprivation of the plaintiff's constitutional right. Hinkle v. City of Clarksburg, WV, 81 F.3d 416 (4th Cir. 1996).

The plaintiff has failed to prove a conspiracy in this case. The situation described in the plaintiff's complaint is contrary to the sworn statements provided by the defendants. To refute these sworn statements, the plaintiff has brought forth a journal he allegedly kept during his time in the SHU. However, a self-serving opinion "absent objective collaboration does not create a genuine issue of fact that can defeat a Motion for Summary Judgment." Williams v. Giant Food Inc., 370 F.3d 423, 433 (4th Cir. 2004). Under this standard, the plaintiff's journal qualifies as a self-serving document with no objective support, and thus is insufficient to create a genuine issue of fact. The plaintiff has also claimed conspiracy through forgery of various documents, but has failed to provide any evidence of such forgery. Because the plaintiff has provided no evidence of a conspiracy claim, it is recommended that his conspiracy claim be dismissed.

### D. Qualified Immunity

The defendants allege that they are entitled to qualified immunity for their actions. The plaintiff contends that the defendants are using the incorrect test, and that in any event, qualified immunity would be improper.

Qualified immunity is an affirmative defense. Bryant v. Muth, 994 F. 2d 1082, 1086 (4th Cir.), cert. denied, 510 U.S. 996 (1993). Whether a defendant is entitled to qualified immunity can be determined at the motion to dismiss stage of the proceedings. Behrens v. Pelletier, 516 U.S. 299, 309 (1996); see also Jenkins v. Medford, 119 F. 3d 1156 (4th Cir. 1997), cert. denied, 522 U.S. 1090 (1998). With regard to qualified immunity, the United States Supreme Court has provided that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitgerald, 457 U.S. 800, 818 (1982); Pritchett v. Alford, 973 F.2d 307, 312 (4th Cir. 1992). Discretionary functions include actions that were "undertaken pursuant to the performance of [the defendant's] duties and [were] within the scope of his authority." Jordan v. Doe, 38 F.3d 1559, 1566 (11th Cir. 1994).

Qualified immunity protects all but "the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335 (1986). To determine whether qualified immunity exists, the court must first determine whether a constitutional or statutory right was deprived, then determine whether the right was clearly established at the time of the violation, and whether a reasonable person in the defendant's position would have understood that his actions violated that right. Saucier v. Katz, 533 U.S. 194 (2001); Doe v. Broderick, 225 F. 3d 440, 454-455 (4th Cir. 2000). Although Saucier originally mandated this order of the two-step analysis in all qualified

immunity cases, the Supreme Court later ruled that "judges of lower courts and courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity test should be addressed first in light of the particular circumstances of the case at hand." Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 818 (2009). This holding gave lower courts the discretion to decide whether it would be more efficient to rule on whether a right was "clearly established" before determining whether there was a constitutional or statutory right being deprived, thus speeding up the qualified immunity analysis and saving judicial resources from unnecessary litigation. *Id.*

Although the plaintiff is correct that the two-step analysis outlined in Saucier was modified in Pearson, he is mistaken to the extent of the change. The discretion given to trial judges from Pearson is regarding the order in which the two prongs are satisfied, not whether to use the two-step analysis at all. *Id.* Although the holding in Pearson left the order entirely to the lower court's discretion, it listed three examples in which the modified two-step analysis could be used: (1) in circumstances where the initial constitutional step has no bearing on the outcome of the case, (2) when the constitutional step provides nothing of value to the field of constitutional law, and (3) if the case is in the pleading stage and all crucial facts have not yet been discovered. *Id.* at 818-819. None of these situations describe the circumstances of this case. In this case, the primary allegation the plaintiff is making is a constitutional violation of his Fifth and Eighth Amendment rights, making the constitutional claims crucial to the outcome of the case. Under these circumstances, the Saucier order of the two-step analysis is proper. Applying the plaintiff's claims to this order, it has been stated in previous sections that the plaintiff has failed to prove that the defendants deprived him of any constitutional right. By failing to satisfy the initial prong of the two-step inquiry, it is

recommended that the defendants be granted qualified immunity in this case.

**E. <u>Sovereign Immunity</u>**

The defendants move to dismiss on the grounds that any <u>Bivens</u> claim against them in their official capacities is barred by the doctrine of sovereign immunity. However, the plaintiff contends that he is not suing the defendants in their official capacity, but rather is suing them only in their individual capacities. Because the plaintiff does not allege claims against the defendants in their official capacities, the defendants' sovereign immunity argument is moot.

**F. <u>Any Defendant Who is Not Alleged to have Taken a Specific Act in Violation of a Constitutional Right Must Be Dismissed</u>**

As it has already been determined that the plaintiff has failed to establish causes of actions against defendants in their individual capacities for constitutional violations, this issue is moot.

**G. <u>Plaintiffs' Other Claims</u>**

In his response to the defendants' summary judgment motion, the plaintiff brings forward two new issues: a right to privacy claim; and a Fourth Amendment claim. The defendants have not responded to these allegations; however, both of these new allegations are without merit.

The plaintiff contends that because two of the defendants conversed with the plaintiff about his medical problems through the door of his holding cell, there was a violation of his right to privacy. However, there is no fundamental constitutional right to privacy of medical information. <u>Sherman v. Jones</u>, 258 F.Supp.2d 440, 444 (E.D. Va. 2003). Further, "given the realities of institutional confinement, any reasonable expectation of privacy that a detainee retained necessarily would be of a diminished scope." <u>Bell v. Wolfish</u>, 441 U.S. 520, 556 (1979). Moreover, the plaintiff has failed to provide evidence that any other detainee or staff member in the SHU heard this conversation or that he suffered any harm from the incident. As no universal right to privacy of

13

medical information exists, and the plaintiff is unable to prove any harm from the incident, it is recommended that the plaintiff's right to privacy claim be dismissed.

The plaintiff also alleges that his Fourth Amendment rights were violated because the circumstances surrounding his detention caused him to be seized without probable cause. The Fourth Amendment provides that "[t]he right of people to be secure in their persons . . . shall not be violated . . . except upon probable cause." U.S. Const. amend. IV. Assuming that a prisoner has the right not to be placed in administrative detention without probable cause,[2] the plaintiff in this case received an administrative detention order from the defendants clearly stating that the reason for his detainment was an investigation into staff misconduct that involved him. [Dckt. 54 at Ex. 3, Att. C]. He was then held in the SHU pending the outcome of that investigation, and after the investigation ended, was held prior to his transfer to protect prison staff integrity *Id.* at Att. A. Under these circumstances, the plaintiff's placement in the SHU was reasonable and justified. Therefore, it is recommended that the plaintiff's Fourth Amendment claim be dismissed.

## V.  Recommendation

For the reasons stated, the undersigned recommends that the defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment [dckt. 48] be **GRANTED** and the plaintiff's complaint [dckt. 1] be **DISMISSED with prejudice** from the active docket of this Court.

Within **fourteen (14) days** after being served with a copy of this Opinion/Report and

---

[2] Although prisoners retain certain Fourth Amendment protections, the Court was unable to find any case which clearly establishes that prison officials must have "probable cause" to place an inmate in administrative detention, and that the failure to so have results in a Fourth Amendment violation. Thus, it appears that even if the plaintiff could establish a Fourth Amendment violation under the circumstances he alleges, the defendants would be entitled to qualified immunity on this claim. Saucier, 533 U.S. 194; Pearson, 555 U.S. 223.

Recommendation, any party may file with the Clerk, written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: May 31, 2011.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE